**Marie J. BRADFORD, Plaintiff-Appellant,**

v.

**TARRANT COUNTY JUNIOR COLLEGE DISTRICT, Joe B. Rushing, Chancellor, et al., etc., Defendants-Appellees.**

**No. 73–1650.**

United States Court of Appeals, Fifth Circuit.

April 4, 1974.

Rehearing Denied May 8, 1974.

William C. Odeneal, Jr., Dallas, Tex., for plaintiff-appellant.

Thomas H. Law, Fort Worth, Tex., for defendants-appellees.

Before COLEMAN, AINSWORTH and GEE, Circuit Judges.

GEE, Circuit Judge:

■ Plaintiff-appellant Marie J. Bradford claimed below that her teaching contract was not renewed because of her exercise of rights of free speech secured to her by the First and Fourteenth Amendments. After a full bench trial, the district court found otherwise. She also asserted that minimal standards of procedural due process were not observed in connection with her non-retention, but was able to show neither tenure, de facto tenure, nor any stigma or damage to her community standing entailed in the non-renewal. Thus, neither liberty nor property were at stake, and questions of procedural due process do not arise.[1] We affirm.

From 1967 through May 1970, Mrs. Bradford was employed as an English instructor by Tarrant County Junior College, a state institution, on successive one-year contracts. In April of 1969, a faculty meeting was held to air faculty concerns centering around the non-renewal of several other teachers' contracts. At this meeting, Mrs. Bradford put several awkward, but entirely proper, questions to the college president. The situation was tense, and the manner and tone of her interrogation was described by various witnesses as hostile, sarcastic, needling and intended to embarrass. Other witnesses saw nothing exceptionable in her behavior. About three weeks later, she was offered a contract for the 1969–1970 academic year at a substantial raise, which she accepted.

In December of that year, Mrs. Bradford received indications that her contract would again be renewed, though these came from her immediate superiors and she knew that the actual offer of renewal could come only from the president.[2] Later that month, pursuant to customary policy and procedure at the college, she attended a confidential evaluation conference with Dr. Speegle, the Dean of Instruction, and her two intermediate supervisors. Following such conferences, at which an instructor's performance was appraised and critiqued, formal recommendations for renewal customarily went forward along the chain of command. The conference proceeded, she being again given to understand that a recommendation for renewal of her contract would be made, to a point at which Speegle remarked, in what he described as a spirit of good will and constructive criticism, that her manner of putting questions at the April, 1969, faculty meeting had been "unprofessional" and a repetition of such conduct might cause her termination. Mrs. Bradford took strong and immediate offense at the term and the conference ended on a strained note.

Next day the meeting was reconvened at her request. Taking the floor, Mrs. Bradford asked Speegle whether she had misheard him as referring to her conduct as unprofessional on the prior day. He confirmed his statement. She then advised him that in so doing he had defamed her before her two other superiors present, that she had consulted an attorney the previous evening, and that if he did not give her a written retraction of his statement she would proceed to law. With this, he terminated the meet-

1. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

2. Mrs. Bradford did not count in contract. She pleaded: "Plaintiff's Complaint herein is based upon Constitutional rights rather than contractual rights." And in a trial brief, she characterized her case as one which ". . . will stand or fall on the merits by whether or not she brings herself within . . . Perry v. Sindermann [408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570]. . ."

ing to consult the school attorneys. Subsequently, Speegle and his superior re-evaluated their positions and recommended against her rehiring. Speegle testified that this was not prompted by any objection to her exercise of free speech, but rather by a feeling that one who could not receive what was meant as constructive criticism at a private conference without demands for formal retraction and reference to litigation posed threats to the teacher evaluation system and the orderly administration of the school. Further proceedings followed, including a presentation by Mrs. Bradford to the college Board of Trustees, which we need not detail in view of our disposition of the case. Mrs. Bradford was not rehired and this suit followed.

Mrs. Bradford correctly recognized below, and recognizes here, that to prevail she must draw her case under the *Roth-Sindermann* shield. To do so, it was necessary that she establish that she was non-renewed for exercise of constitutional rights, which would have entitled her to direct reinstatement, or show a property right or interest in liberty of which she was deprived, which would have required that the college accord her minimal due process in deciding her renewal. She was unable to do either. As to First Amendment rights, the court below found that the failure to rehire her did not result from her free speech at the April faculty meeting, a finding which is not clearly erroneous. As to rights of liberty or property, it found that the incident which precipitated unfavorable action on her new contract was private and was reflected neither in news media nor in her personnel file. Thus, she was in no way stigmatized or injured in her good name or reputation by action of any defendant.[3]

It was undisputed that she had no tenure, de jure or de facto. All she showed was a mere expectancy of employment. Since under *Roth-Sindermann* this does not necessitate a hearing, or invoke the protection of procedural due process, we need not inquire whether she received it.

Affirmed.

---

3. Mrs. Bradford admitted that she had no proof of any publicity given anywhere by the college to the incident. She gave publicity to it because she felt it "needed professional attention," but admitted that for all the college said she could have given it out that she left to take a position closer to home.