Paula R. IRBY, Plaintiff,

v.

W. Candler McGOWAN et al.,
Defendants.

Civ. A. No. 7793–73–P.

United States District Court,
S. D. Alabama, S. D.

June 11, 1974.

J. Victor Price, Jr., Montgomery, Ala., for plaintiff.

J. B. Blackburn, Bay Minette, Ala., Robert F. Adams, Mobile, Ala., for defendants.

## ORDER

PITTMAN, Chief Judge.

The plaintiff is a duly certified school teacher in the State of Alabama and a resident citizen of Baldwin County, Alabama. The defendants are the Principal of the Fairhope High School, the Superintendent of the Baldwin County Board of Education, the members of the Baldwin County Board of Education, and the members of the Fairhope High School Board of Trustees, Baldwin County, Alabama. They are all residents of Baldwin County, Alabama. They are all sued in their individual and representative capacities.

The plaintiff brought this action against the defendants, pursuant to 42 U.S.C. § 1983, seeking: (1) to enjoin the defendants from refusing to reinstate the plaintiff to her position as a teacher in the Baldwin County school system, (2) an injunction requiring the defendants to give the plaintiff a due process hearing on the reasons for her non-renewal, and (3) back pay for the period of time the plaintiff was unemployed by reason of her unconstitutional termination. By Order of this court dated April 3, 1974, the hearing on the preliminary injunction was consolidated with the trial on the merits, pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure.

The complaint alleges three causes of action against the defendants. The first is that the plaintiff was deprived of her liberty or property without due process of law. This contention is based on the fact that the defendants stated that the plaintiff's contract was not renewed because the plaintiff was non-cooperative. The plaintiff contends that by making this charge the defendants damaged the plaintiff's ability to secure other employment, thereby damaging the plaintiff's liberty. The second cause of action alleges that the plaintiff had a reasonable expectation of reemployment arising out of operation of Alabama law and statements made by the defendants, and that this expectation of reemployment was a property right, and that she was deprived of this property right by the action of the defendants in failing to renew her contract. The third cause of action alleges that the plaintiff's First Amendment right to free speech was

violated in that the true reason the plaintiff's contract was not renewed was because of her exercise of her right to free speech.

The complaint initially alleged that the defendants informed the plaintiff they would accept a letter of resignation and such resignation would look better on the record.

The plaintiff's contentions as set out in the pretrial documents required by the court allege a "charge of being 'non-cooperative' pressed against her by the defendants." The plaintiff further asserts "she had been forced to discuss the circumstances surrounding her past 'non-renewal' with other prospective employers."

The plaintiff contends an entry in the minutes of the Board of Education on May 11, 1972, "Mrs. Paula Irby—Dismissed—Non-Cooperative," did not become known to her until February 1973; therefore, the Alabama statute of limitations of one year for tort actions did not apply. At the same time she contends an entry in the minutes is a public record even though not disclosed and constitutes a publication.

The defendants contend that the plaintiff is a non-tenured teacher and that they followed the provisions of Title 52, § 361(2), Code of Alabama of 1940 as last amended,[1] and that the only requirement necessary for the School Board was to give her notice prior to the last day of the term in the school year for which she was employed and this was done. The defendants further contend no publication was made of the minute entry by them and the only disclosure was to the plaintiff's husband, an attorney, at his insistence, in February 1973. Furthermore, the only publication of the entry has been made by the plaintiff, her husband, and persons to whom they saw fit to so inform.

The defendants further contend the plaintiff did not have a property interest in reemployment nor was she entitled to a due process hearing. They further claim that they accepted the plaintiff's resignation in writing, submitted at her husband's suggestion, on May 23, 1972. Defendants further contend the filing of the suit on August 16, 1973, was more than one year past the minute entry date and is barred by the Alabama one year statute of limitation.[2]

The defendants deny that the plaintiff's free speech was inhibited in any way and that her non-cooperative attitude was a personality quirk manifested by such things as reluctance to comply with orderly procedures, late submissions in violation of established procedures and an unwillingness to take an assigned workload until it was made clear she would have to.

The defendants further contend there were no promises or actions taken prior to her non-reemployment that should have given her a reasonable expectation

---

1. § 361(2). Teacher deemed re-employed for succeeding school year unless notified.—Any teacher in the public schools, whether in continuing service status or not, shall be deemed offered re-employment for the succeeding school year at the same salary, unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; and such teacher shall be presumed to have accepted such employment unless he, or she, shall notify the employing board of education in writing to the contrary on or before the fifteenth day of June. The employing board of education shall not cancel the contract of any teacher in continuing service status, nor cause notice of non-employment to be given to any teacher whether in continuing service status or not except by a vote of majority of its members evidenced by the minute entries of said board made prior to or at the time of any such action.

2. § 26. Limitation of one year.—The following must be commenced within one year:
Actions for malicious prosecution.
Actions for seduction.
Actions qui tam, or for a penalty given by statute to the party aggrieved, unless the statute imposing it prescribes a different limitation.
Actions of libel or slander.
Actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated.

of reemployment. They claim the true party in interest is the Alabama Education Association who is admittedly bearing the expense of attorney's fees, witness fees, etc.

## FINDINGS OF FACT

The parties admit the following facts:

The plaintiff has had five years experience as a teacher, but only one of these years was as an employee of the Baldwin County Board of Education, as a teacher of English in the Fairhope High School. She was employed on a one year contract in a non-tenured status. On the morning of May 23, 1972, plaintiff was given a letter from the Baldwin County Board of Education signed by W. Candler McGowan as its Superintendent, advising her that her employment by the Baldwin County Board of Education would cease on Tuesday, May 23, 1972. This was on or before the last day of the term in which she was employed. Later, plaintiff mailed a letter dated May 23, 1972, addressed to the Board of Education of Baldwin County tendering her final resignation effective as of Tuesday, May 23, 1972.

The defendants did not give the plaintiff a hearing before the non-renewal of her contract.

Mr. W. Candler McGowan, the Superintendent of the Baldwin County Board of Education, prepared the minutes of a special meeting held May 11, 1972, of said Board of Education which contained the statement "Fairhope—Mrs. Paula Irby—Dismissed—Non-Cooperative."

Plaintiff was hired as an English teacher at a time when the entire Baldwin County school system, grades 7 through 12, was in the midst of a three-year, federally funded, experimental English project known as Title III PL 89-10, entitled *"Program—Staff Development in English Instruction."* The federal government required that this program be approved, audited and evaluated at the end of each scholastic year. This program involved the phas-

ing of students into three phases, the place a student was assigned to depended on his educational level in the subject. Because this program was experimental, and because it had to be conducted within guidelines established by H. E. W., the program required extensive preparation, and evaluation by the teacher.

From the evidence, certain facts are uncontradicted. All the classes she taught were part of the federally funded program which was in the first year of a three year pilot project. The letter of resignation tendered by the plaintiff was at the suggestion of her husband without a suggestion or request from the defendants as originally charged. The resignation was accepted by the defendants.

She made an application for a teaching position with the Mobile County system. In answer to a question on the application "Why did you leave your last employment," her answer was "Resigned to stay home with daughter."

She made an oral inquiry concerning employment at a private school in Baldwin County in August 1972. She was told that it was too late, which she acknowledges as correct, to take applications for the 1972–73 school year. She made oral inquiry to a private school in Mobile in 1972. She did not follow-up on her inquiries or applications in 1973.

All teachers in the project taught on more than one grade level and more than one phase of a three phase program. She objected to an assignment the last six weeks of the school year to a different grade level and a different phase. She made known her objections to other teachers, and taught the course only after a conference with the Principal, and, at her insistence, changes were made from the planned assignment.

The Alabama Education Association (AEA) of which she was, but is no longer, a member, is bearing the plaintiff's expense in this litigation.

The court finds the minute entry "Fairhope—Mrs. Paula Irby—Dismiss— Non-Cooperative." of the Board of Edu-

cation was not, and has not been, disclosed prior to the taking of evidence in this case by any defendant except to the plaintiff's husband, an attorney, at his insistence in February 1973.

Contrary to her contention that she discussed the circumstances surrounding her past non-renewal with other prospective employers, the court finds she did not.

The court further finds that an inquiry by a fellow teacher, who exercised no authority with reference to renewing contracts, as to whether or not she would serve as co-sponsor for the yearbook the next year, the discussion of a probable room assignment, and a suggestion she leave her materials in the customary cabinets, was nothing more than tentative future planning.

The court further finds that the plaintiff knew contract renewal was not automatic, and that her contract had to be renewed by the Baldwin County Board of Education.

The court finds the plaintiff turned in the name for a scholastic award after the deadline and on the day the awards were to be made. Those in charge of the program overlooked the plaintiff's delinquency and processed and honored the recommendation. The plaintiff was a competent subject matter teacher but reluctantly performed paperwork chores and established procedures.

The plaintiff criticized social promotion, the procedures and methods employed in the pilot project in which she was teaching, and asked more questions at faculty meetings than most teachers. She reluctantly accepted and performed her duties after discussions and decisions had been made.

The court finds that the plaintiff's contract was not renewed because of her inability to accept direction and supervision from her superiors in a manner calculated to foster cooperation and harmony among the members of the teaching staff at Fairhope High School. The court finds that this inability to accept direction, an unwillingness to follow guidelines of the English program, and the plaintiff's argumentative attitude were the reasons the plaintiff's contract was not renewed, not her exercise of her First Amendment rights.

While "non-cooperative" may be some impediment, when taken together with the records of the school which indicate she was "very good in subject matter," it by no means forecloses her freedom to take advantage of other employment opportunities. The defendants did not invoke any regulation nor take any action to bar her from employment in other schools.

## CONCLUSIONS OF LAW

■ Since the plaintiff was in a non-tenured status when her contract was not renewed, she must prove facts bringing her within the scope of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, (1972) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, (1972) in order to be entitled to relief. That is, she must prove that she was deprived of either "liberty or property" to be entitled to procedural due process *(Roth)*, or she must prove that her non-renewal was predicated on her exercise of First and Fourteenth Amendment rights *(Sindermann)*.

■ The plaintiff was in no way deprived of an interest in "liberty" thereby entitling her to a due process hearing. "Dismissed—Non-cooperative" is not within the purview of Board of Regents v. Roth, *supra*:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, no-

tice and an opportunity to be heard are essential."

\* \* \* \* \* \*

Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. *Id.* at 573, 92 S.Ct. at 2707.

Certainly this language indicates that such remarks must be of sufficiently serious import that further employment is seriously jeopardized. In order to recover the plaintiff must show that this entry of "Non-cooperative" damaged her good name, reputation, honor or integrity in such a way that her standing and associations in her community were seriously impaired, or that this charge imposed a "stigma" or other disability on her which foreclosed her freedom to take advantage of other employment opportunities. The entry in the minutes that a person is non-cooperative does not taint her good name, reputation, honor, or integrity. Such an entry is a far cry from the charges of dishonesty or immorality which were cited in *Roth*.

Nor can the court conclude that this charge imposed such a "stigma" or other disability on the plaintiff that her freedom to take advantage of other employment opportunities was foreclosed. In Robinson v. Jefferson County Board of Education, 485 F.2d 1381 (5th Cir. 1973), the plaintiff was charged with: (1) use of profanity, (2) inefficiency and incompetency in her teaching duties, and (3) inability to relate to her students. All are more serious charges than that presented in the case *sub judice*. In speaking to the plaintiff's allegation of deprivation of liberty, the court said:

> And, although the Board's action might affect Ms. Robinson's ability to find other work, the effect was not so great as to constitute a deprivation of

"liberty" within the meaning of the due process clause. *Id.* at 1382.

Furthermore, the evidence is uncontradicted that the charge would not have been revealed to any prospective employers, except for the plaintiff's own actions. The defendants testified that, upon request by a prospective employer, they would have furnished only the fact of the plaintiff's nonretention, not the stated reason. The plaintiff testified that she could not discover the reason for her nonretention until she and her husband forced the issue. Thus, the plaintiff could, and did, apply for other employment without revealing the existence of the charge. Therefore, it is clear that the plaintiff was not stigmatized by the action of the defendants. See Bradford v. Tarrant County Jr. College Dist., 492 F.2d 133, 5th Cir., 1974.

█ School authorities should have some right to make subjective evaluations of a work record of a person. Although the remark may detract somewhat from the desirability for employment, as long as it does not foreclose that teacher's employability or substantially detract from it, a due process hearing should not be required. The court simply cannot, and should not, sit in judgment on, and supervise every remark made, concerning the employment or non-employment of persons in a school system and require that every person not reemployed be entitled to a due process hearing. It appears in this case there was a personality conflict between this teacher, other teachers, and the administration. If "personality conflict" had been entered in the minutes it could also be argued that she was a less desirable employee and should be afforded a due process hearing. I do not think Board of Regents v. Roth intended to include each and every criticism.

█ The initial thrust of the case appeared to be directed toward the inhibition of plaintiff's right of free speech. In an effort to ascertain whether or not the First Amendment was infringed in any way, the court explored all the cir-

cumstances as to what was said and done by the plaintiff and defendants in connection with the nonrenewal of her contract. Let there be no mistake, it is this court's opinion that a teacher has a right to express her views with refer-to such things as excessive and cumbersome paperwork, the validity or invalidity of "social passing," the evaluation of school programs, including the pilot program which the defendants were anxious to see succeed, etc. "Unity," "support," "oneness" should not be achieved by silence, blind obedience, or apathy. On the other hand, while all must be given an opportunity to be heard, for an orderly and intelligent administration of any program time necessarily must be limited in which debate can be had, then decisions must be made and followed (so long as not immoral, illegal, fraudulent, etc.).

■ Until such time as procedures, methods, etc. can be changed in orderly fashion, those operating within the school should be expected to comply within the deadlines and without generating ill feeling among the faculty and administration and without impeding the work to be done.

■ The court concludes that although some of the defendants' witnesses misconceived the proper area of free speech, the defendants who testified appeared to have a proper awareness of teachers' rights. The substantive reason for the entry "Non-cooperative" was the plaintiff's reluctant attitude in the fulfillment of her duties and failure to meet deadlines. The issue of free speech appears to the court to be more of a ploy by the plaintiff than one of substance.

■ It is clear that the plaintiff was not deprived of a property right by the defendants' action within the purview of due process or under her second cause of action claiming a reasonable expectation of reemployment. The argument that Alabama law provides a claim of entitlement to reemployment was fully adjudicated in Robinson v. Jefferson County Board of Education, 485 F.2d 1381 (5th Cir. 1973) and was decided adversely to the plaintiff. Therefore, the plaintiff is not entitled to relief on this ground.

The plaintiff's 1971–72 contract did not secure or grant her any interest in reemployment for the next year. While she may have had a unilateral expectation of reemployment, she clearly did not have a claim of entitlement to it. The few remarks concerning the school yearbook and the leaving of her materials in her room were totally insufficient to vest a property right in her or give to her reemployment rights greater than any other non-tenured teacher. Furthermore it is clear that the Baldwin County Board of Education was the only entity authorized to extend an offer of reemployment to the plaintiff, and the plaintiff knew this. See Bradford v. Tarrant County Jr. College Dist., *supra*. Therefore, the plaintiff has not been deprived of a property interest.

In *Sindermann, supra,* the Supreme Court held that a non-tenured teacher's contract could not be non-renewed because of his exercise of First and Fourteenth Amendment rights. However, in the case *sub judice*, the court has found that the plaintiff's contract was not renewed for reasons other than her exercise of her First Amendment rights, and therefore, *Sindermann* is not applicable to the instant case and does not entitle the plaintiff to relief.

It is clear that a non-tenured teacher's rights concerning contract non-renewal are circumscribed within the scope of *Roth-Sindermann,* and the plaintiff must bring her case within this scope to prove a claim upon which relief can be granted for failure of due process. As the Fifth Circuit said in Bradford v. Tarrant County Jr. College Dist., *supra,* a case factually similar to the instant case:

[T]o prevail [the plaintiff] must draw her case under the *Roth-Sindermann* shield. To do so, it was necessary that she establish that she was non-renewed for exercise of constitutional rights,

which would have entitled her to direct reinstatement, or show a property right or interest in liberty of which she was deprived, which would have required that the college accord her minimal due process in deciding her renewal.

The plaintiff has failed to prove facts that would bring her under the *Roth-Sindermann* shield.

In any event, she has had a full hearing in this court. Courts do not usually require the doing of a useless act. To send this case back to the defendants for a due process hearing with a report back to this court would be an unnecessary burden on all parties. The questions involved have been thoroughly examined and argued.

The plaintiff has not been refused employment because of the entry "non-cooperative" made by the defendants.

The court is further concerned with the development of the case from an equitable viewpoint. The defendants were first charged with suggesting to her that they would accept a letter of resignation since it would look better on her record. The evidence is to the contrary. Plaintiff's husband took it upon himself to inquire if a letter of resignation would be acceptable in lieu of a nonrenewal of her contract. The defendants cooperated.

The plaintiff charged the defendants published the minute entry. They did not. They revealed it only to the plaintiff's lawyer husband.

The plaintiff charged she was forced, because of ethical standards, to reveal the circumstances concerning the nonrenewal of her contract to prospective employers. She did not, but informed the only one to whom she made a formal application that she resigned to stay home and look after her child.

■ She has not suffered lack of employment due to the publication of the minute entry by the defendants. The publication has been made by the plaintiff and those associated with her. As a matter of equity, the court finds that the plaintiff should not be permitted by her own efforts to create a condition by which she claims she is injured.

■ In the spirit of equity, it is the court's judgment that since the defendants accepted the plaintiff's letter of resignation, the minute entry "Fairhope—Mrs. Paula Irby—Dismissed—Non-Cooperative" should be expunged from their records.

In view of the court's conclusion that the plaintiff is not entitled to recovery in this action, it is not necessary for the court to pass on the question of whether or not her recovery would be barred by the one year statute of limitations which was then in force and effect in Alabama.

It is therefore ordered, adjudged, and decreed that judgment is hereby entered in favor of the defendants. The costs are taxed to the plaintiff.

In the exercise of this court's equitable power, the defendants are ordered to expunge from their records the minute entry: "Fairhope—Mrs. Paula Irby—Dismissed—Non-Cooperative."