388 So.2d 182 (1980)
Warner FLOYD
v.
The ALABAMA HISTORICAL COMMISSION et al.
78-569.
Supreme Court of Alabama.
September 12, 1980.
*183 James R. Cooper, Jr. of Cooper & Cooper, Montgomery, for appellant.
Charles M. Crook of Smith, Bowman, Thaggard, Crook & Culpepper, Montgomery, for appellees.
PER CURIAM.
This is an appeal by Floyd from a judgment of the circuit court granting defendants' motion to dismiss plaintiff's amended complaint.
Floyd was Executive Director of the Alabama Historical Commission. On September 15, 1978, he filed suit against the Alabama Historical Commission and its members in their representative and individual capacities.
In this complaint, as amended, Floyd alleged that:

*184 COUNT I

* * * * * *
2. From September 1, 1967 until August 22, 1978 plaintiff was employed by defendants as the Executive Director of the Alabama Historical Commission.
3. On August 22, 1978 defendants fired plaintiff at a meeting of the A.H.C. in Montgomery, Alabama. Prior to this meeting, plaintiff was not notified that he was going to be fired. At the meeting, plaintiff was not given the opportunity to cross examine anyone who was to bring charges against him.
4. Plaintiff alleges that as a direct result of the public meeting and firing on August 22, 1978, his due process rights in liberty under the Fourteenth Amendment of the United States Constitution and Article I Section 6 and 13 of the 1901 Alabama Constitution were violated. Plaintiff alleges that before and after being fired defendants made known that plaintiff was fired because of incompetence in his work, criminal activities, financial irregularities from undisclosed audits, extreme unprofessional conduct and various other allegations of misconduct. Plaintiff alleges that since he was not given notice and an opportunity to defend against said charges, his good name, reputation, standing in the community, honor, integrity, honesty, ability to obtain other employment, governmental or private, has been severely impaired and damaged. In addition, he has lost wages. Said treatment by the various board members were public statements.

COUNT II

* * * * * *
2. Plaintiff alleges that as a direct result of the public meeting and firing on August 22, 1978, his due process rights in property under the Fourteenth Amendment to the United States Constitution and Article I Section 6 and 13 of the 1901 Alabama Constitution were violated. Plaintiff alleges that he had a property interest in his job due to the fact that he was non-probationary and was employed for ten years by A.H.C. Plaintiff's property rights consisted of his medical insurance provided by the State, benefits obtained through his membership in the Alabama State Employee Association, and his pension benefits through his membership as an Alabama State Employee in the Employees Retirement System of Alabama.

COUNT III

* * * * * *
2. Plaintiff alleges that defendants fired plaintiff on August 22, 1978 for a constitutionally impermissible reason. Plaintiff alleges that he was fired because he exercised his Right of Freedom of Speech provided under the First Amendment to the United States Constitution and Article I Section 4 of the Alabama Constitution.
3. Plaintiff alleges that defendants fired him for publicly criticizing the A.H.C. and individual commission members at speeches before the Decatur Rotary Club and the Morgan County Historic Preservation Society during June-July 1978, and at other places.
4. Plaintiff alleges that defendants fired him in violation of his Freedom of Speech rights guaranteed under the United States and Alabama Constitutions for publicly lobbying and directing a public lobbying effort against House Bill 504 and 505 during the 1978 Alabama Legislative Session. * * *
5. Plaintiff alleges that he was fired by defendants because of his public support, lobbying and favorable public comments in regard to the Live-in-a Land Mark Program.
6. Plaintiff alleges that he was fired for his numerous public statements in regard to allegations of disloyalty among staff and members of the Alabama Historical Commission.
7. As a result of defendants' firing of Warner Floyd, Plaintiff has suffered damage to his good name, reputation, and opportunity to obtain employment and has lost wages.

*185 COUNT IV

* * * * * *
1. That plaintiff was fired in a secret session of the A.H.C. on August 22, 1978 by the defendants.
2. That no personality or good names of any individuals were discussed at that secret session.
3. That prior to the August 22, 1978 secret session defendants had met secretly and conducted business which had as an end result the firing of Warner Floyd.
A preliminary hearing was held on September 18th and 19th to consider Floyd's request for a preliminary injunction to prevent defendants' dismissal of him. Defendants, on September 22nd, filed a motion to dismiss. Floyd's request for a preliminary injunction was denied on September 29th. Floyd then filed a motion for summary judgment. Defendants filed counter affidavits. Interrogatories were also filed. For reasons not apparent in the record, the trial court then granted defendants' motion to dismiss the complaint.
On appeal, Floyd alleges numerous errors were committed by the trial court in dismissing his complaint. Floyd's first contention of error was that he was dismissed for exercising his First Amendment right of freedom of speech. More specifically, Floyd asserts that the reason for his discharge was his public criticism of the Historical Commission's policies.
In support of this contention, Floyd relies upon Perry v. Sinderman, 408 U.S. 593, 93 S.Ct. 2694, 33 L.Ed.2d 570 (1972), in which the United States Supreme Court held that the district court's granting of summary judgment in favor of defendant must be reversed where there had not been a full exploration of plaintiff's claim that dismissal from public employment had been due to the exercise of the First Amendment right to free speech. The Court stated that:
For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interestespecially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible.
92 S.Ct. at 2697.
In recognizing this First Amendment right of public employees to speak out on public issues it must also be remembered that First Amendment rights of expression are not absolute, and that regulation as to time, place and manner of exercise is proper when found to be reasonably related to a valid public interest. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).
The United States Supreme Court, in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), recognized the state's interest an as employer in promoting the efficient performance of state operations. This was articulated as a balancing test which was stated as follows:
"[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." Keyishian v. Board of Regents, supra, 385 U.S. at 605-606, 87 S.Ct. at 685. At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, *186 in promoting the efficiency of the public services it performs through its employees.
88 S.Ct. at 1734-35.
In Pickering, the Court noted certain factors to be considered in the balancing process. The Plaintiff in Pickering was a teacher who had been discharged for submitting a letter to a local newspaper criticizing school board policies. The Court held that this public statement related to a matter of general public concern and Plaintiff's employment was "only tangentially and insubstantially involved in the subject matter of the public communication." 88 S.Ct. at 1738. Factors considered by the Court in reaching this decision were:
The statements [were] in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning.
88 S.Ct. at 1735.
The factors enunciated in Pickering, were applied by the Fifth Circuit Court of Appeals in Abbott v. Thetford, 529 F.2d 695 (5th Cir.), rehearing en banc, 534 F.2d 1101 (5th Cir. 1976). There, a judge of the juvenile court discharged his chief probation officer because this officer violated an express order of the judge prohibiting the filing of lawsuits by staff employees. The Court of Appeals initially reversed the district court's decision which had upheld the judge's authority to discharge the officer. However, upon rehearing, the Court of Appeals reversed and adopted Judge Gewin's dissent as its opinion. Judge Gewin concluded that the judge had the authority to discharge the probation officer as this officer's relationship with the judge had to be one of confidence and cooperation. He also found that such a relationship is necessary to properly discharge court functions and a lack of cooperation would impair the operation of the court.
In applying the above principles to the facts before us, we find that the trial court correctly dismissed this aspect of Floyd's amended complaint.
The Alabama Historical Commission is created pursuant to § 41-9-240, et seq., Code 1975. The Commission is granted powers under the Code to preserve the State's heritage through historic preservation. Section 41-9-247, empowers the Commission to employ an executive director. This section reads as follows:
§ 41-9-247. Executive director.
The commission may employ an executive director, who shall serve at the pleasure of the commission and who shall be responsible directly to the commission for the general supervision and execution of the work of the commission. The commission shall fix his compensation, with the approval of the governor and the state personnel board, the same to be paid from the funds of the commission, and shall further designate his duties and authority.
Floyd, as Executive Director, was responsible for carrying out the work of the commission. It is through the executive director that the commission acts and it is this director who must implement the policies of the commission. As a result, a close working relationship, requiring cooperation and confidence between the executive director and the commission, must be present.
The public statements by Floyd were directed against those under whose direction he closely worked. These statements, which attacked the commission's policies, could have a substantial effect upon the efficient operation of the commission. It is apparent from the statute that the function of the commission and the executive director is to achieve the objects and purposes for which the commission was created; for the commission to set the Policy and the director to effectuate it there must be cooperation *187 between the two-otherwise the commission becomes ineffectual. Therefore, we find the discharge of Floyd does not violate his First Amendment rights.
Floyd's second contention is that he has been denied procedural due process as the firing has stigmatized him and injures his prospects for future employment. In support of this contention, Floyd relies upon Foster v. Blount Co. Bd. of Educ., 340 So.2d 751 (Ala.1976), and Gowens v. Cherokee Co. Bd. of Educ., 348 So.2d 441 (Ala.1977). Both of these cases dealt with a nontenured teacher who was discharged from employment. Each relied upon Irby v. McGowan, 380 F.Supp. 1024 (S.D.Ala.1974), which stated:
The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For `[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'

* * * * * *
Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities ....
380 F.Supp. at 1028.
In Codd v. Velger, 429 U.S. 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), the United States Supreme Court found that where a nontenured employee had been stigmatized in the course of a decision to terminate his employment a hearing was required to clear his name; however, where there was no challenge to the substantial truth of the material in question, no hearing was required. The Court stated:
Assuming all of the other elements necessary to make out a claim of stigmatization * * * the remedy mandated by the Due Process Clause of the Fourteenth Amendment is "an opportunity to refute the charge." 408 U.S., at 573, 92 S.Ct., at 2707. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name," id., at 573 n. 12, 92 S.Ct., at 2707. But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation.

* * * * * *
But the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely "to provide the person an opportunity to clear his name." If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him.

* * * * * *
* * * Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required.
97 S.Ct. at 883-84.
Assuming Floyd has been stigmatized as a result of his discharge, he must still allege that the stigmatizing fact was substantially false to establish a violation of due process. Codd v. Velgar, supra; McElwee v. Todd, 581 F.2d 1182 (5th Cir. 1978).
Floyd was discharged at a public hearing. This hearing was public at Floyd's own request. No transcript of this meeting accompanies the record; however, interrogatories of certain members of the commission were submitted by Floyd in his motion for summary judgment. Each member of the commission whose interrogatory was taken was asked the reason for Floyd's discharge. Their answers can be summarized as being: incompetency; ineffectiveness; and, the best interest of the commission. In his own affidavit Floyd states that prior to his discharge and in the days following it, public *188 statements were made by the commission members indicating that the reasons for his discharge were incompetency, criminal activities and unprofessional conduct. In his amended complaint, Floyd requested an opportunity to defend against these charges.
A complaint is not to be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Trabits v. First National Bank of Mobile, 295 Ala. 85, 323 So.2d 353 (1975).
We cannot now say, from the record before us, that Floyd could not prove any set of circumstances which would entitle him to relief. The question before us is whether Floyd has alleged that the comments by the commission, relating to the reasons for his discharge, were substantially false as required by Codd v. Velger, supra.
In his amended complaint Floyd contends that he had no opportunity "to defend against" the charges made against him by the commission. This request "to defend" is sufficient to meet the Codd test at least insofar as a motion to dismiss is concerned. This differs from the finding in Codd that no allegation of substantial falsity was made. However, that decision came on a motion for a directed verdict after a full trial.
The dismissal by the trial court of that portion of Floyd's complaint in which he claimed to be entitled to a hearing because of the stigmatizing effect of the statements made by commission members was in error and is hereby reversed. We find that Floyd has sufficiently made out a claim under the Fourteenth Amendment that he was harmed by the denial of a hearing.
Floyd's final contention of error is that he was discharged by the defendants while they were meeting in secret session. He alleges that such a secret or closed meeting is prohibited by Code 1975, § 13-5-1, and that any business conducted at such meeting is void and of no force and effect.
In Ex Parte Alabama Public Service Commission, 376 So.2d 665 (Ala.1979), this Court considered what effect should be given to actions taken at a secret meeting in violation of § 13-5-1. We stated that
The act does not provide that action taken in violation thereof is void. If the legislature so intended the act could have been easily written to so provide. Griswold v. Mount Diablo Unified School District, 63 Cal.App.3d 648, 134 Cal.Rptr. 3 (1976). Cf. Dobrovolny v. Reinhardt, 173 N.W.2d 837 (Iowa 1970) (act subsequently amended to render such action voidable, Iowa Code 1979, § 28 A.6); Elmer v. Board of Zoning Adjustment, 343 Mass. 24, 176 N.E.2d 16 (1961) (act subsequently amended to render such action voidable, Mass. Law Ann. ch. 39, § 23C (Supp. 1979)). See N.J.Stat.Ann. § 10:4-15; Pa. Stat.Ann. tit. 65, § 272 (Supp.1979); Wash.Rev.Code Ann. § 42.30.060.
376 So.2d at 667.
Therefore, the fact that defendants may have violated § 13-5-1 is of no avail to Floyd. His discharge is still effective.
The order of the trial court dismissing that portion of Floyd's amended complaint which concerns his right to a due process hearing because of the stigmatizing effect of the statements made as to why he was discharged, is reversed. The dismissal by the trial court of the remaining portions of Floyd's amended complaint is hereby affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and JONES and SHORES, JJ., concur specially.
TORBERT, Chief Justice (concurring specially).
I concur that the case must be reversed, but only because of the posture of the case on appeal. Although evidence was taken on plaintiff's motion for a preliminary injunction, affidavits were filed by the parties, *189 interrogatories were answered, and a motion for summary judgment was filed by plaintiff, this case was not submitted to the trial court on motion for summary judgment, with the trial court considering the matters in the record. The trial court dismissed the complaint, as amended, upon defendant's motion to dismiss under Rule 12(b)(6), ARCP.
It is important that the law relating to the rights of public officials and employees with respect to termination and discharge be settled. Accordingly, I take this opportunity to provide my views on these issues, especially with reference to procedural due process.
Procedural due process is not required unless the state deprives one of a "liberty" or "property" interest within the meaning of the Fourteenth Amendment to the United States Constitution. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). An employee has a "property" interest in his employment where the employee has a legitimate claim of entitlement to his position, and whether employment rises to the level of a legitimate claim depends on state law, rules, or other understandings. Id.
Here, Code 1975, § 41-9-247, controls the character of Mr. Floyd's employment. The statute expressly provides that the director serves at the pleasure of the Historical Commission. Since Mr. Floyd could be terminated at the will of the Commission, no state deprivation of a "property" interest entitled him to a due process hearing upon his dismissal.
In spite of the lack of a "property" interest in continued employment, termination may implicate a "liberty" interest when the dismissal stigmatizes the employee's good name, reputation, honor or integrity. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The fact of termination itself does not call into question an employee's good name-only when the employer makes public disclosure of the reasons for discharge is the employee's "liberty" interest threatened. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Even if the reasons for termination are false, when there is no communication of the reasons, no "liberty" interest is impinged. Id. If the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, the employee is entitled to a hearing in order to clear his name. Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).
Because the due process hearing for deprivation of the "liberty" interest in a good name is only to enable the employee to clear his name, the employee must allege the communication by the employer was substantially false. Id. Obviously, if the allegations are not false, the employee can present no evidence to clear his name. In such a case, the hearing would be purposeless.
Equally apparent is the requirement that the stigmatizing disclosure occur other than at the due process hearing. In Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the reasons for the employee's dismissal were communicated privately to the employee and then again in answer to interrogatories after litigation commenced. The United States Supreme Court said:
Since the former [private] communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his "good name, reputation, honor, or integrity" was thereby impaired. And since the latter communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim. A contrary evaluation of either explanation would penalize forthright and truthful communication between employer and employee in the former instance, and between litigants in the latter. [Footnotes omitted.]
Id. at 348-49, 96 S.Ct. at 2079.
Certainly, when the disclosure occurs on plaintiff's initiation or at his request, plaintiff *190 cannot later make the disclosure the basis of a due process claim.
JONES and SHORES, JJ., concur.