Frank D. BICKEL and The Garland Professional Firefighters' Association, Plaintiffs-Appellees,

v.

Bob G. BURKHART, The Garland Firemen's and Policemen's Civil Service Commission and The City of Garland, Texas, Defendants–Appellants.

No. 79–1287.

United States Court of Appeals, Fifth Circuit. Unit A

Dec. 17, 1980.

Merril E. Nunn, Pete Eckert, Garland, Tex., for defendants–appellants.

Frederick M. Baron, Dallas, Tex., for plaintiffs–appellees.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

GEE, Circuit Judge:

In *Davis v. Williams*, 617 F.2d 1100 (5th Cir. 1980), this court held, en banc, that a municipal fire department rule requiring firemen to refrain from engaging in "[c]onduct prejudicial to good order" was not facially unconstitutional. The instant case raises the issue, not presented in *Davis*, of the constitutionality of that and other fire department rules as applied in a specific situation as well as the facial constitutionality of the other rules.

## I. *Facts and Issues on Appeal.*

In 1976, members of the Garland, Texas, fire department had become increasingly dissatisfied with the pay they were receiving. On January 19, 1977, a meeting was held at a local fire station in which Mr. Don Paschal, Community Service Administrator for the City of Garland, presented information comparing the Garland fire department pay scale to that of other cities to the three firemen in attendance, one of whom was Frank D. Bickel, the plaintiff in this action. The meeting had been arranged by the Chief of the Garland Fire Department, Bob G. Burkhart, a defendant in this action, who also attended.

At the conclusion of his presentation, Mr. Paschal opened the floor for questions and comments. In the course of the subsequent discussion Mr. Bickel voiced several complaints regarding the department and certain of its equipment. Some two months later Mr. Bickel took and passed a civil

service examination administered to firemen with the rank of "firefighter" who wished to be promoted to "driver engineer." Two days later, he was called in to see Chief Burkhart, who asked for facts substantiating the complaints Bickel had made at the Paschal meeting. Mr. Bickel, who received no advance notice of the purpose of the meeting with Chief Burkhart and who testified he had forgotten all about the meeting with Paschal, had no facts to offer. The Chief then told plaintiff he would let him know his assignment in a couple of weeks.

On May 16, 1977, Bickel received written notice from Chief Burkhart that he had been passed over for promotion to driver engineer[1] "for violation of Fire Department Rules, Regulation [sic] and Procedures." Chief Burkhart's memorandum to Mr. Bickel explained his decision as follows:

"On January 19, 1977, I conducted a meeting at Fire Station # 5 in the presence of Mr. Don Paschal, Community Services Administrator for the City of Garland. During this meeting you made the following statements:

1. Our equipment is no good, that you answered a fire alarm and tried three Scott Air–Paks before you found one that would work.

2. You stated that we had two new engines at Central Station doing nothing, while you had a 1962 model at your station making more fire calls than any station in our city.

3. You stated that you were ashamed to talk to members of other fire departments, because they laughed at us.

On March 26, 1977, I called you into my office and ask [sic] for facts to substanti-

ate these allegations. You stated you had none.

We find that during the year of 1976 your station made less fire calls than any station in our city except Station # 5, which is a new station. You also admited [sic] that the two Scott Air–Paks that would not work were the two carried on your engine. When ask [sic] why they were not repaired, you stated it was not your job to repair equipment.

This type attitude and untrue statements are in violation of the following Rules, Regulations and Procedures....

Article 5.2 ... Paragraph 40. [Firemen shall] refrain from being a party to any malicious gossip, report or activity that would tend to disrupt department morale or bring discredit to the department or any member thereof, or making derogatory statements, are [sic] adversely criticizing Department policy, activities, or officers except by written report to the Chief of the Department, through channels.

Article 5.4 ... Offenses.

(4) Conduct unbecoming a member of the department.

(5) Conduct prejudicial to good order."

Shortly after being denied his promotion, Bickel brought the present lawsuit under 42 U.S.C. § 1983, alleging the regulations quoted above were unconstitutional both facially and as applied to deny him the promotion to driver engineer. The Garland Professional Firefighters Association (Association), an unincorporated association, joined the suit seeking declaratory and injunctive relief with respect to the same regulations. Named as defendants in addition to Chief Burkhart were the City of Garland, Texas, and the Garland Firemen's and Policemen's

---

1. Promotions within the Garland Fire Department are subject to Civil Service procedures. When openings at a particular level are available, a test is given by the Civil Service Commission. Applicants' test scores are combined with their "seniority points," and the candidates are then ranked according to their combined scores. The Commission then forwards this ranking of eligible candidates to the chief of the fire department; if the chief decides to "pass over" an eligible applicant in favor of one

with a lower score, he is required to provide the passed-over applicant with written notice of the reason for the pass over. Tex.Rev.Civ. Stat.Ann. art. 1269m, § 14 (Vernon) (amended 1979). At the time Mr. Bickel took the promotional exam there were twelve openings for driver engineer; the list of eligible candidates forwarded to Chief Burkhart from the Civil Service Commission ranked Mr. Bickel eighth. At least one candidate with a score lower than Mr. Bickel's was promoted.

Civil Service Commission. Prior to trial, the derogatory statements–adverse criticisms clause of Article 5.2(40) was deleted from the department's regulations,[2] as was the provision of Article 5.4 prohibiting "conduct unbecoming a member of the department."[3]

While the trial court did not grant injunctive relief, it ordered that Mr. Bickel be made "whole, monetarily and in all other ways as a result of defendants' refusal to promote him," on the grounds that all of the challenged regulations were unconstitutional both facially and as applied. In addition, the court awarded plaintiffs attorney fees without articulating reasons supporting its determination of the proper amount of an attorney fee award.

The issues presented by the defendants' appeal are:

(1) Whether the challenged regulations still in force (the prohibitions against malicious gossip and conduct prejudicial to good order) are facially unconstitutional;[4]

(2) Whether the criticism voiced by Bickel in the Paschal meeting was a "substantial" or "motivating" factor in Chief Burkhart's decision not to promote him;

(3) Whether that criticism was constitutionally protected speech;

(4) Whether Chief Burkhart would have denied Bickel the promotion even if plaintiff had not voiced his criticisms in the Paschal meeting; and

(5) Whether a remand is necessary for an articulation of the reasons underlying the trial court's determination of the amount of attorney fees awarded plaintiffs.

The second, third, and fourth issues represent the tripart inquiry mandated by *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Van Ooteghem v. Gray*, 628 F.2d 488 (5th Cir. 1980).

II. *Facial Constitutionality.*

 The district court's determination that the rule prohibiting firemen from engaging in conduct prejudicial to good order is unconstitutional on its face is reversed for the reasons set forth in our en banc decision in *Davis v. Williams*, 617 F.2d 1100 (5th Cir. 1980), upholding that identical pro-

---

**2.** Because of this deletion, and because the lower court's judgment awarding back pay and retroactive seniority to Mr. Bickel can be affirmed on the basis of our holding that the regulations were unconstitutionally applied to him, we need not address the facial constitutionality of the deleted "derogatory statements–adverse criticism" provision of the regulations. However, we note the reference to that provision in this court's en banc decision in *Davis* as the "portion of the rules most offensive to the first amendment." 617 F.2d at 1103. *See Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

**3.** Because of this deletion and because the judgment for Mr. Bickel can be affirmed on the basis of the application of the rules to him being unconstitutional, we need not decide whether the "conduct–unbecoming–a–member-of–the–department" prohibition is facially invalid.

The "conduct–prejudicial–to–good–order" prohibition was also deleted; however, a new offense was added to Article 5.4 that provides as a basis for discipline "any other grounds

specified in Article 1269m, Section 5, Texas Revised, V.T.C.S., as grounds for removal or suspension of employees." Article 1269m, § 5 of Tex.Rev.Civ.Stat.Ann. (Vernon) provides that firemen may be removed or suspended for, *inter alia*, engaging in conduct prejudicial to good order. Accordingly, the constitutional validity of that prohibition is still in question.

**4.** As stated in footnote 2, the judgment in favor of Bickel can be upheld on the basis of our conclusion that the challenged regulations were unconstitutionally applied to him. Nevertheless, the facial constitutionality of the challenged regulations not mooted by the amendments described in the text is still at issue. Plaintiff Association sued for injunctive and declaratory relief from the regulations on the ground that they are facially unconstitutional. While the trial court did not grant the Association injunctive relief, it did hold the regulations facially unconstitutional in ordering that Bickel be made whole. The defendants' appeal specifically challenges the trial court's holding on this point.

vision in a different fire department's regulations.

■ The district court's invalidation of the malicious gossip prohibition[5] is also reversed. By its terms this rule applies only to any gossip, report, or activity that is "malicious." Pursuant to the normal rule of statutory construction, we interpret "malicious" in such a manner as to uphold the constitutional validity of the rule. Accordingly, we find that this prohibition applies only to false statements made with knowledge of their falsity or made with reckless disregard of whether they are false or true. So construed, the rule does not violate the First Amendment. *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); *D'Andrea v. Adams*, 626 F.2d 469, 473–74 n.2 (5th Cir. 1980).

**5.** "Firemen shall refrain from being a party to any malicious gossip, report or activity that would tend to disrupt department morale or bring discredit to the department or any member thereof."

**6.** In *Stone v. Board of Regents*, 620 F.2d 526, 529 n.7 (5th Cir. 1980), we expressly left unanswered the question of whether "public employees [may] maintain actions based on claims that their employers altered the conditions of their employment in retaliation for their exercise of protected first amendment rights." Where, as here, important conditions of employment are involved, a public employee will not be foreclosed from § 1983 relief merely because the impermissible retaliation did not result in the termination of his employment. *See Swilley v. Alexander*, 629 F.2d 1018 (5th Cir. 1980).

**7.** There is some uncertainty as to the proper scope of appellate review of a trial court's resolution of this causation issue. In *Van Ooteghem v. Gray*, 628 F.2d 488, 491 (5th Cir. 1980), several Title VII cases from this circuit are cited wherein the issue of an employer's motivation in dismissing an employee has been characterized as one of ultimate fact and thus subject to plenary review rather than to review under the clearly erroneous standard of Fed.R. Civ.P. 52(a). *Jeffries v. Harris County Community Action Ass'n*, 615 F.2d 1025, 1031 n.5 (5th Cir. 1980); *Parson v. Kaiser Aluminum & Chem. Corp.*, 575 F.2d 1374, 1382–83 (5th Cir. 1978); *Causey v. Ford Motor Co.*, 516 F.2d 416, 420 -21 (5th Cir. 1975). We are unaware of any cases in which the issue of whether a public employee's speech was a substantial or motivating factor in his employer's decision to take action against him

### III. Mt. Healthy *Analysis.*

Mr. Bickel's right to back pay and retroactive seniority for the denial of his promotion[6] is conditioned upon his showing that he was not promoted because of the remarks he made at the Paschal meeting and that the remarks were constitutionally protected. In addition, if the defendants establish by a preponderance of the evidence that Bickel would have been denied promotion even in the absence of the protected conduct, plaintiff cannot recover. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ The first inquiry is whether Bickel's conduct in voicing criticisms at the Paschal meeting was a substantial or motivating factor in Chief Burkhart's decision not to promote Bickel.[7] While defendants' argu-

has been characterized as an issue of ultimate fact and thus not subject to the clearly erroneous standard of review. Arguably, whether or not the discrimination issue in a Title VII suit is an issue of ultimate fact subject to plenary review, the substantial- or -motivating–factor issue in a case such as this one is not. In *Causey*, the court stated that "[a]lthough discrimination *vel non* is essentially a question of fact it is, at the same time, the ultimate issue for resolution in this case, being expressly proscribed by 42 U.S.C.A. § 2000e -2(a). As such, a finding of discrimination or nondiscrimination is a finding of ultimate fact" reviewable independently of the clearly erroneous standard. *Causey, supra* at 421. The question of whether an employee's speech was a substantial or motivating factor in an employer's decision to discipline the employee cannot similarly be described as one of ultimate fact, for it is not "the ultimate issue for resolution in this case"; rather, it is a preliminary issue, the resolution of which cannot provide grounds for the employee to recover unless (1) the speech is also found to be constitutionally protected, and (2) the employer does not establish that the same decision would have been made in the absence of the constitutionally protected speech.

Thus, a strong argument can be made that the substantial–or–motivating-factor issue is simply a question of fact reviewable under the clearly erroneous standard. *See Schneider v. City of Atlanta*, 628 F.2d 915, 920 (5th Cir. 1980). In the instant case, we find it unnecessary to decide the appropriate scope of review, for we would uphold the district court's finding on this issue even if we subjected the finding to plenary review.

ment that Bickel was not promoted because of his failure to maintain his equipment finds some support in the record, there is more than enough evidence to sustain the trial court's finding that Bickel's comments at the Paschal meeting were at least a substantial or motivating cause, if not the only cause, of the decision to deny him the promotion.

Chief Burkhart's memo, quoted and discussed above, explaining why Bickel was not promoted clearly provides a strong basis for the inference that a motivating factor in the Chief's decision was Bickel's voicing of criticisms at the Paschal meeting. In addition, had the primary reason for the Chief's decision been Bickel's failure to maintain his equipment, it is likely that the memo would have cited Article 5.4(A)1 of the department's regulations, which defines "neglect of duty" as an actionable offense. Further, the record reveals that while Chief Burkhart ordered an investigation to determine if the Scott Air–Paks were operable, he made no inquiry of Bickel's supervisor as to whether Bickel was properly maintaining his air–paks. In fact, the supervisor testified that Bickel was "probably better at [maintaining the air–paks] than most people were." Finally, Chief Burkhart admitted that he was upset by Bickel's criticisms made in the presence of Mr. Paschal, his superior, and testified that, "I think I have the power to talk to the men and say, 'Looky here, you shouldn't make statements around the stations and in public to this effect. You should be proud of the organization if you're going to work for it and if you're going to accept our money.'" On the basis of this evidence we have no difficulty in upholding the trial judge's finding that Bickel's promotion was denied because of the comments he made at the Paschal meeting.

The issue of whether Bickel's comments were constitutionally protected is more troublesome. In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court held that a balancing test was to be employed to determine the extent to which the State can regulate the speech of its employees: "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734–35, 20 L.Ed.2d at 817. Application of the *Pickering* balancing test is a question of law, *Schneider v. City of Atlanta*, 628 F.2d 915, 918–19 (5th Cir. 1980); in the instant case, we agree with the trial judge's implicit finding that Bickel's comments made in the Paschal meeting were constitutionally protected.[8]

Initially, we note that private, as well as public, expression by a public employee is constitutionally protected, though "striking the *Pickering* balance in each context may involve different considerations." *Givhan v. Western Line Consolidated School Dist.*, 439 U.S. 410, 415 n.4, 99 S.Ct. 693, 696 n.4, 58 L.Ed.2d 619, 624 n.4 (1979). Where private expression is involved, the balancing test encompasses not only the content of the employee's speech—the main focus when the employee voices his criticisms publicly—but also the "manner, time, and place in which it is delivered." *Id.*

Application of the *Pickering* test to the instant case dictates that Bickel's statements were constitutionally protected. The object of Bickel's criticism was the department as an institution; his remarks were not aimed, either directly or indirectly,[9] at

---

8. We note the existence of some dispute as to whether the *Pickering* balancing test has been refined by the Supreme Court into a compelling state interest test. *Van Ooteghem v. Gray*, 628 F.2d 488, 492–93 n.4 (5th Cir. 1980), (Reavley, J., specially concurring). Because we find Bickel's comments constitutionally protected

under both approaches, we need not decide the correct standard.

9. Bickel's statements could be construed as critical of Chief Burkhart in the sense that the Chief, as the head of the department, bears the ultimate responsibility for the efficient operation of the department. However, we are not prepared to take the position that all state-

anyone. Thus, the concern expressed by the Court in *Pickering* that statements criticizing a particular individual might interfere with either internal discipline or harmony among co–workers is of little relevance to this case.

The context in which the plaintiff spoke out is important. The record clearly indicates that after Paschal made his presentation on salaries, he opened the meeting to discussion. According to one fireman in attendance, "[i]t was just an open, frank discussion, 'If you have anything on your mind, let's get it out in the open and talk about it, anything.'" Similarly, Bickel testified that he thought Paschal was effectively asking for "input on what we thought about anything that had to do with the fire service." Further, it is clear that prior to the meeting the firemen were upset about not having received a raise and that the meeting was called in response to this dissatisfaction; complaints and criticisms surely were expected. There is no indication that Bickel's remarks had any adverse effect on "the efficiency of the public services [the fire department] performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811, 817 (1968). Accordingly, we find the balance weighted in favor of Bickel's speech being constitutionally protected.

Defendants direct our attention to *Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17 (2nd Cir. 1979). There, the court applied the balancing test of *Pickering* to uphold the decision of fire department officials dismissing a fireman for various exercises of speech. Relying on the "manner, time and place" language of *Givhan*, discussed *supra*, the court noted

that the fireman had engaged in threats, "carping criticism, and abrasive conduct," and that the district court had found that his intention was to undermine the authority of the department's officers. Further, the lower court found the fireman was motivated by deep resentment and intense bitterness rather than by a concern with the welfare and efficiency of the fire department. These factors, combined with the fact that in fighting fires "an esprit de corps is essential" because lives are at stake, led the court to find the fireman's speech outside of constitutional protection under the *Pickering* balancing analysis.

We do not find *Janusaitis* inconsistent with our decision. Because of the nature of firefighting, and its high stakes, operational efficiency and harmony among co–workers are critical. Where a fireman, motivated by resentment, bitterness and self–aggrandizement, engages in disruptive conduct intending to undermine the authority of department officers, the speech accompanying such conduct is not constitutionally protected. As the court in *Janusaitis* notes, the Supreme Court's *Pickering* opinion leaves "open for case–by–case decision" application of the balancing necessary to determine whether a public employee's statements unduly interfere with the efficiency with which governmental services are provided. Here, as has been discussed, Bickel's statements were not directed at any individual, they were made in a closed meeting in which firemen dissatisfied with their pay were invited to voice comments, and they were not made in a hostile or threatening manner; there is no indication that Bickel's statements interfered with the operation of the Garland Fire Department at all.[10]

ments made by employees criticizing the departments or agencies where they work constitute criticisms of either their immediate supervisors or the department or agency heads. Here the defendants do not even argue that Bickel's statements were critical of Chief Burkhart.

10. Defendants also rely on *Bradford v. Tarrant County Junior College District*, 492 F.2d 133 (5th Cir. 1974), wherein we upheld the decision of school officials not to rehire a faculty mem-

ber. There the teacher was not rehired because of her reaction to constructive criticism given to her in her annual confidential evaluation conference. The teacher had taken immediate offense to the Dean's remarks that her manner of putting questions to the college president at an earlier faculty meeting had been "unprofessional"; the following day she claimed she had been defamed, demanded a retraction, and threatened legal action. In re-

The third strand of the *Mt. Healthy* analysis is whether the defendants have established by a preponderance of the evidence that the decision not to promote Bickel would have been made even in the absence of the protected speech. On this question, the trial court found that Bickel was not promoted because of the exercise of his First Amendment right to free speech, and that "no other grounds have been shown as a basis for the refusal to promote plaintiff." This finding is not clearly erroneous: the record reveals that Bickel had been a fireman for several years and that he had never received any complaints or been disciplined in any manner; that he had passed the promotional exam and ranked eighth among candidates for the twelve positions; and that contrary to Chief Burkhart's assertion that the nonpromotion decision was based on his failure to maintain his equipment, Bickel performed his duties with respect to the air–paks better than most of the firemen. Further, the Chief's memo clearly indicates that the basis for his decision was the criticism of the department expressed by Bickel in the meeting with the Chief's supervisor, Mr. Paschal.

In summary, we find that (1) Bickel's comments were a substantial or motivating factor in the Chief's decision not to promote him, (2) those comments were constitutionally protected, and (3) but for Bickel's exercise of his First Amendment right, he would have been promoted. Accordingly, we affirm the lower court's judgment that Bickel be made "whole, monetarily and in all other ways."

## IV. Attorney Fees.

The trial judge awarded plaintiffs attorney fees without stating the reasons for allowing the amount awarded. Consequently, the record does not provide a basis for this court to review the amount of the award. Accordingly, we remand the case for an articulation of reasons underlying the amount of the fee to be awarded, as mandated by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Premier Corp. v. Serrano*, 565 F.2d 1353 (5th Cir. 1977).

AFFIRMED in part, REVERSED in part and REMANDED in part.

sponse, school officials decided not to rehire her because her conduct "posed threats to the teacher evaluation system and the orderly administration of the school." *Id.* at 135.

Our decision in *Bradford* was based upon our conclusion that the trial court's finding that the failure to rehire was not caused by the teacher's speech at the faculty meeting was not clearly erroneous. To this extent *Bradford*, decided prior to *Mt. Healthy*, is explicable under the first strand of the *Mt. Healthy* analysis, i. e. that the teacher's speech at the faculty meeting was not a substantial or motivating cause of the officials' decision not to rehire her. However, the officials' decision was based on her expression at the closed evaluation conference, which, under *Givhan*, was not necessarily outside the protection of the First Amendment. *See Janusaitis, supra* at 25. Nevertheless, *Bradford* does not dictate a result contrary to the one we reach in the instant case, as application of the *Pickering* balancing test to the facts in *Bradford* yields a different result than does its application in this case. In *Bradford* the teacher's speech threatened the teacher evaluation system and clearly interfered with the working relationship between her and her supervisors. Finally, as with the fireman in *Janusaitis*, the teacher was not expressing concern with the welfare and efficiency of the administration of the school. In short, the teacher's speech did interfere with "the interest of the [college] in promoting the efficiency of the public services it performs through its employees," *Pickering, supra*, which interest was not outweighed by the interest of the teacher in voicing her demands and threats to the Dean.