T. R. ANDERSON et al., Plaintiffs,

v.

H. H. EDWARDS et al., Defendants.

Civ. A. No. 81–0033–H.

United States District Court,
S. D. Alabama, S. D.

Jan. 22, 1981.

E. Graham Gibbons, Mobile, Ala., for plaintiffs.

Barry Hess, Mobile, Ala., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAND, District Judge.

On January 19, 1981 T. R. Anderson, et al. filed a complaint seeking declarative and injunctive relief. Included in the prayer for relief was a request for a preliminary injunction and temporary restraining order. On January 21, 1981, the Court held a hearing on the consolidated motion of the plaintiffs for both injunctive reliefs. After receiving evidence by way of stipulations and admissions and argument at the hearing of January 21, 1981, the Court makes the following findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

I. Findings of Fact

The crux of this law suit is a directive issued by the Fire Department of the City of Mobile which threatens suspension or discharge if any member of the Mobile Fire Department issues a public statement on

any subject which the directive proscribes. The complaint alleges violations of 42 U.S.C. §§ 1981, 1983, and 1985 as well as violations of the first and fourteenth amendments to the United States Constitution.

At the hearing the attorney for the plaintiffs dismissed his claim under 42 U.S.C. § 1981. In response to questioning by the Court he conceded that no racial animus is alleged to be involved in this law suit. Likewise, the Court noted that no claim exists under the first and fourteenth amendments to the United States Constitution because no implied cause of action exists under those amendments. Instead, where rights granted by the first or fourteenth amendments are violated a plaintiff must vindicate those rights through 42 U.S.C. § 1983. After its colloquy with counsel for the plaintiffs the Court ruled that the only claims for relief presented by this law suit arise under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. The only relief sought by the plaintiffs is injunctive and declarative relief.

The findings of fact which the Court makes at this stage of the law suit reflect the findings which are minimally necessary to support its decision on the request for a preliminary injunction. On July 17, 1981 the defendant H. H. Edwards, in his capacity as the Fire Chief of the Fire Department of the City of Mobile, received instructions from the three city commissioners to post the following directive at each operating fire station in the City of Mobile:

MOBILE FIRE DEPARTMENT
SPECIAL ORDER    3–81

TO: Deputy Chiefs, District Chiefs, Fire Marshal, Fire Inspectors, Fire Captains, Firefighter-Drivers, Firefighters, Paramedics and all other Department Personnel

FROM: Chief H. H. Edwards, Jr.

SUBJ: Policy for Public Statements originating In and Regarding the Mobile Fire Department

DATE: January 15, 1981

Effective this date and upon receipt of this order the following policy regarding public statements shall be strictly adhered to. This policy is as follows:

1. Any public statements issued to the media by members of the Mobile Fire Department expressing policy concerning the Mobile Fire Department or the City of Mobile shall be made only by the Mobile Fire Chief or a member of the Mobile City Commission unless expressly authorized in writing by the Mobile Fire Chief or a member of the Mobile City Commission.

2. No member of the Mobile Fire Department shall make any public statement that reasonably considered promotes fear or panic to any member of the general public of this community.

3. Every member of the Mobile Fire Department, of course, is free to express his opinion on any subject to anyone so long as that expression does not contravene any portion of this order heretofore stated.

4. Any violation of this order shall be taken as cause for dismissal or suspension for cause as insubordination and violation of a lawful and reasonable order made and given by a superior officer in contravention of Rule 14.2 of the Laws and Rules of the Mobile County Personnel Board.

As of the time the complaint was filed on January 19, 1981 and as of the date of the hearing on January 21, 1981, no application of the directive had been made and no fireman had been suspended or discharged because of any violation of Special Order 3–81.

II.  Conclusions of Law

A.  Subject-Matter Jurisdiction

The subject-matter jurisdiction of this Court over the civil rights claims in this case is bottomed on 28 U.S.C. § 1343(a)(3), (4). The defendants insist that this Court is barred by the terms of the Clayton Act, 29 U.S.C. § 52, and by the terms of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, from issuing any injunction. Both acts were

passed by Congress in an effort to allow unions to engage in economic warfare through strikes, slow downs and other means without judicial intervention. The Clayton Act was effectively circumvented by judicial interpretation. Although the Clayton Act remains law, it yields to the subsequently enacted Railway Labor Act, 45 U.S.C. §§ 151–163, in case of a conflict between the two. In effect, the Norris-LaGuardia Act displaces the Clayton Act as the penultimate restriction on the power of a federal court to issue labor injunctions. The argument of the defendants is that since the Norris-LaGuardia Act prohibits a federal court from issuing an injunction in a labor dispute this Court is barred from considering any injunctive relief on behalf of the plaintiffs because the dispute between the plaintiff firemen and the defendants is essentially a labor-management dispute.

The argument of the defendants is fundamentally defective. It is true that when Congress adopted the Norris-LaGuardia Act it intended to take federal courts out of the labor-injunction business except in very limited circumstances. Injunctions may no longer be used as a strike breaking device. Neither may injunctions be used to short circuit the ordinary negotiation process which the National Labor Relations Act, 29 U.S.C. §§ 151–166, the Labor-Management Relations Act, (variously scattered in Title 29), or the 1934 amendments to the Railway Labor Act, 45 U.S.C. §§ 151–158, 160–162, envisioned. Thus the general structure of the federal labor laws is to encourage negotiation between the employer and its employees rather than federal intervention in the form of injunctions.

The Norris-LaGuardia Act narrowed the circumstances under which federal courts could grant injunctions in labor disputes. *United States v. Hutcheson*, 312 U.S. 219, 231, 61 S.Ct. 463, 465, 85 L.Ed. 788 (1941). Consequently, although the defendants in this case rely on both the Clayton Act and the Norris-LaGuardia Act the Court need not consider the impact of the Clayton Act. If the Norris-LaGuardia Act does not apply then neither does the less comprehensive proscription of the Clayton Act. If the Norris-LaGuardia Act does apply, then the defendants' reliance upon the Clayton Act is unnecessary.

For purposes of the Court's analysis the Court will assume, along with the defendants, that the instant action should be characterized as a labor dispute rather than as a civil rights action. Even assuming that this action is a labor dispute the Norris-LaGuardia Act does not bar this Court from entertaining an application by the plaintiffs for injunctive relief against conduct of their employer. In *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Supreme Court held that the Norris-LaGuardia Act does not apply to the federal government when the federal government is an employer or to relations between the federal government and its employees. *Id.* at 274, 67 S.Ct. at 687. This conclusion followed from the Court's analysis of the legislative intent which prompted passage of the Norris-LaGuardia Act. The purpose of the Norris-LaGuardia Act was to allow employees to use the full play of the various federal labor laws which had been enacted to regulate their relations vis-a-vis their employers. 29 U.S.C. § 102.

■ The basic reasoning which led the Supreme Court to conclude in the *United Mine Workers* case that the Norris-LaGuardia Act does not apply to the federal government qua employer leads the Court to conclude that the Norris-LaGuardia Act does not apply to the City of Mobile qua employer.

The court finds that Congress did not intend the Norris-LaGuardia Act to limit the power of federal courts to grant injunctive relief when it is called for under the Fourteenth Amendment and its implementing statutes. Reviewing Congress's [*sic*] statement of purposes in Sec. 2 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 102, the Supreme Court observed, "These considerations, on their face, obviously do not apply to the Government as an employer or to relations between the

Government and its employees." *United States v. United Mine Workers*, 330 U.S. 258, 274, 67 S.Ct. 677, 687, 91 L.Ed. 884 (1947). The Court went on to hold that the Act did not apply to situations in which the United States was an employer. *Id.* at 276, 67 S.Ct. 677. Although United Mine Workers applied specifically to the federal government, many of the same elements of statutory language and legislative history indicate just as clearly that the Act was also not intended to extend to public employment situations on the state and local levels. The plaintiffs' cause of action is based squarely on the Fourteenth Amendment and its implementing statutes, which apply to the defendants here. The court can find no evidence that Congress intended to apply the Fourteenth Amendment to the states in every situation except public employment disputes in which injunctive relief is appropriate.

Accordingly, the court holds that the Norris-LaGuardia Act does not apply to limit the authority of this court to grant injunctive relief in this case. *Lake Michigan College Federation of Teachers v. Lake Michigan Community College*, 390 F.Supp. 103, 135 (W.D.Mich.1974), *rev'd on other grounds*, 518 F.2d 1091 (6th Cir. 1975), *cert. denied*, 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976). Given the structure of the federal labor laws and the purpose of the Norris-LaGuardia Act the Court holds that the Norris-LaGuardia Act does not bar this Court from entertaining the request which the firemen have filed for injunctive relief.

■ One other jurisdictional problem remains in this case. Federal courts are courts of limited jurisdiction. They are limited by the case-or-controversy requirement of Article III of the Constitution. Part of the injunctive relief which the plaintiffs seek goes toward the constitutionality of Special Order 3–81 as that order is applied. Counsel for the plaintiffs stipulated that

Special Order 3–81 had never been applied by any of the defendants. Therefore, there is no controversy which is ripe for adjudication in federal court as to the constitutionality of the *manner* in which Special Order 3–81 is applied. In view of this, it is therefore ordered that that portion of the complaint which seeks injunctive or declaratory relief as to the application ("as applied") of Special Order 3–81 be dismissed from this law suit.

**B. Injunctive Relief**

■ To obtain a preliminary injunction it must be demonstrated that the movant has a substantial likelihood of success on the merits, that irreparable injury will be suffered unless the injunction issues, that the threatened injury to the movant outweighs the damage which the injunction may cause the opponent, and that the injunction would not be adverse to the public interests. *Canal Authority of the State of Florida v. Calloway*, 489 F.2d 567, 572 (5th Cir. 1974); see, e. g. *Dallas Cowboys Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184 (5th Cir. 1979). The sole issue presented on this motion for a preliminary injunction is whether Special Order 3–81 is constitutional on its face. As noted, the constitutionality to the order as applied has been dismissed for failure to present a ripe case for controversy. For the reasons stated below, it is the studied conclusion of this Court that Special Order 3–81 is constitutional on its face and that the plaintiffs will not succeed on the merits of their claim.[1] The motion of the plaintiffs for a preliminary injunction is denied.

■ Not all speech is protected by the first amendment. For instance, the state may regulate the advocacy of illegal conduct, defamation, speech which invades privacy, obscene speech, and fighting words or other offensive language. Similarly, some regulations which indirectly restrict speech are equally constitutional. Examples of

---

1. Since this is a challenge to an ordinance on its face no additional fact finding by the Court at some later stage in this law suit could alter the Court's analysis. Counsel for the defendants has stipulated that the complaint correctly recites Special Order 3–81 in full. With that established only legal conclusions remain to be drawn.

these include regulations which restrict the time, place, and manner in which certain speech acts may be made (loudspeakers, use of public parks), certain symbolic speech, and some freedoms of association.

The issue presented by this challenge to the facial constitutionality of Special Order 3–81 is whether the order improperly proscribes speech which the state is not permitted to regulate either directly or indirectly. There is no doubt that state action is involved here. It is through the force and authority of the state that Commissioners Doyle, Mims, and Greenough directed Chief H. H. Edwards to post the order.

■ The text of the order presents only two places which could conceivably be considered problematic. Paragraph 1 restricts members of the Mobile Fire Department from issuing any statement which "express[es] policy concerning the Mobile Fire Department or the City of Mobile ..." Without doubt the City has a right to restrict members of the Fire Department from purporting to represent to the public what the official policy of the department is if that person is not authorized to express official policy. As used in the order the word *policy* could be read to include any statement. If it were read to include any statement it would surely be unconstitutional. The state is not entitled, under ordinary circumstances, to impose such a blanket restriction on free speech. However, where a statute or ordinance—in this case the directive—is susceptible to two different readings, one reading which would make it constitutional and a second reading which would make it unconstitutional, the rule of construction is that a court must read the statute to be constitutional. *Bickel v. Burkhart*, 632 F.2d 1251, 1255 (5th Cir. 1980) (addressing regulations of a fire department). Thus it is possible to read paragraph 1 of Special Order 3–81 as forbidding only those speech expressions by firemen which purport to represent the official policy of the Mobile Fire Department or the City of Mobile. Thusly read paragraph 1 is facially constitutional.

Paragraph 2 is susceptible to varying interpretations. If read as a broad prohibition on the right of a fireman to speak out on matters of public concern it is unconstitutional. That follows even if the speech act of the firemen would raise some concern in a reasonable member of the community. The fact that speech causes people to entertain doubts or uncertainties does not allow the state to prohibit the speech. However, the Court construes paragraph 2 to prohibit only fighting words. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) ("face-to-face words" to cause a breach of the peace by the addressee). It should be noted that where paragraph 2 can be read to be constitutional under the fighting-words doctrine that doctrine encompasses a very narrow range of expression.

■ The Court holds that Special Order 3–81 is facially constitutional. *Davis v. Williams*, 617 F.2d 1100 (5th Cir. 1980) (en banc; construing the facial constitutionality of certain fire department regulations). In reaching this holding it should be noted what the Court does not decide. The Court does not decide the extent to which a firefighter may speak out on public issues. Public employees, and firefighters in particular, face certain limitations upon their right to speak freely simply because they are public employees. Criticism which is inaccurate may subject a public employee to discharge without violating first amendment rights. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *D'Andrea v. Adams*, 626 F.2d 469 (5th Cir. 1980). "Because of the nature of firefighting, and its high stakes, operational efficiency and harmony among coworkers are critical. Where a fireman, motivated by resentment, bitterness and self-aggrandizement, engages in disruptive conduct intending to undermine the authority of department officers, the speech accompanying such conduct is not constitutionally protected." *Bickel v. Burkhart*, 632 F.2d at 1257. Necessarily, in an area such as this, each case rises and falls on its own facts. It should be emphasized that while a statute or, in this case, an official directive may

be facially constitutional its application can easily drive city officials upon the shoals of unconstitutional conduct.

**C.  Order**

It is hereby ordered that the preliminary injunction sought by the plaintiffs against the enforcement of Special Order 3–81 is denied.  It is further ordered that the attack on Special Order 3–81 as that directive is applied is dismissed because of the absence of a ripe case or controversy. By stipulation of counsel for the plaintiffs the claim under 42 U.S.C. § 1981 is voluntarily dismissed.  Finally, it is ordered that the claims which the plaintiffs seek to imply under the first and fourteenth amendments to the United States Constitution are dismissed for failure to state a claim upon which relief can be granted since those amendments do not afford implied causes of action.

The attention of counsel for the plaintiffs is respectfully directed to the requirements of Local Rule 9, which regulates the maintenance of class actions in this district.