Russell Curtis SIMON, David Bennett Kirk, Michael Steven Daniel, Tonie Luxton, Nell Fruendensprung and Terry Fletcher, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITY OF CLUTE, TEXAS, a Municipality; Rick Steele, Chief of Police, Jerry Adkins, Mayor of City of Clute; Mark S. Wicker, Detective Sergeant in City of Clute Police Department, Faye Markwardt, Detective in City of Clute Police Department; Members of the City of Clute City Council individually, Julio Garcia, Ronnie Broaddus, Gene McDaniel, Harry Blevins and Dave Hill, Defendants.

Civ. A. No. H–83–5143.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 30, 1986.

Alaniz, Bruckner & Sykes, William H. Bruckner, Houston, Tex., for plaintiffs.

Mills, Shirley, McMicken & Eckel, John Eckel, Galveston, Tex., and Tekell, Book & Matthews, William C. Book, Houston, Tex., for defendants.

MEMORANDUM AND ORDER

STERLING, District Judge.

Pending before the Court is the motion of Plaintiffs for Entry of Order of Dismissal and Final Judgment, or in the alternative, Motion for Preferential Trial Setting. On April 17, 1985, a pre-trial conference was held in the chambers of this Court in reference to the above styled case. Upon review of the contentions of the parties, the Court determined that this case was improper for trial by a federal jury and this

case was dismissed. The Court will now enter its reasons for dismissal.

This is an action by the Plaintiffs who are presently, or were at one point in time, employed by the City of Clute Police Department as police officers or police support personnel. By far, most of the Plaintiffs are no longer employed with the City of Clute Police Department.

The Defendants are the City of Clute, a Municipality, and the State of Texas, and various elected or appointed City officials including Chief of Police, Rick Steele, Mayor of Clute, Jerry Adkins, Detectives Mark S. Wicker and Faye Markwardt, and members of the City Council of Clute, Julio Garcia, Ronnie Broaddus, Gene McDaniel, Harry Blevins and Dave Hill, all of whom are being sued in their individual or official capacity.

Plaintiffs have brought this civil rights action alleging violations of rights secured to them under the First and Fourteenth Amendments to the Constitution of the United States and Title 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Plaintiffs allege that their civil rights have been violated "by the actions and continued threats of action by the Defendants in connection with Plaintiffs' employment as police officers, by harassing, suspending, reassigning, placing on probation or otherwise interfering with Plaintiffs' employment." (Pl. First Amended Complaint, Pg. 2). Plaintiffs further allege that the above cited actions were taken in retaliation for Plaintiffs' exercise of their First Amendment rights in the form of a letter which allegedly raised public concerns regarding the operation of the City of Clute Police Department. This letter was presented to the City Council in a closed meeting on or about July 28, 1983. Plaintiffs claim that the contents of this letter raised issues of public concern and that, therefore, such expression was entitled to First Amendment protection. *See Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 10 L.Ed.2d 811 (1968); *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972);

*Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

The letter or petition which Plaintiffs contend is entitled to First Amendment protection is basically a grievance against the then Chief of Police, Rick Steele. (A copy of the letter presented by the Plaintiffs at the City Council meeting on July 28, 1983, is attached to this Memorandum as Appendix 1). In addition, Plaintiffs had given the City Council a more detailed statement, dealing with the topics of favoritism, arrogance, discipline, concern, "degrading", duties, and untruthfulness. (Attached as Appendix 2). This petition was signed by each of the named Plaintiffs on July 27, 1983. Plaintiffs requested a meeting with the Clute City Council on July 28, 1983, following the regular City Council meeting that evening. The fifteen Plaintiffs who had signed the petition appeared before the City Council at approximately 12:30 a.m. the morning of July 29, 1983.

Plaintiff asserts that issues of public concern were presented by the police officers at the Clute City Council meeting in the early morning hours of July 29, 1983. The record reflects that some mention of issues such as preparation of the budget (see Deposition of Ronald N. Broaddus, Pg. 36), allocation of training funds (see Deposition of Jerry Adkins, Pg. 15; Deposition of Ronald Broaddus, Pg. 36), placing of cages in patrol cars (Deposition of Ronald Broaddus, Pg. 36), utilization of personnel in performing jobs (Deposition of Ronald Broaddus, Pg. 36) was made. However, this meeting was, by and large, a forum in which Plaintiffs vented their frustrations over the manner and style in which Chief Steele conducted himself and how he related to his staff, and it was these personal grievances that motivated these Plaintiffs to ask for the meeting. The Court, having had opportunities to converse with counsel regarding the communications between council members and the police officers at the July 29th meeting, views this gathering as a voicing of discontent over working conditions. It is evident from the letter presented at the City Council meeting and the accompanying list detailing their com-

plaints against Steele (see Appendices 1 and 2) that Plaintiffs harbored a great deal of personal animosity and dislike towards Steele and that this was the focus of the meeting. The written documents presented to the Council members were addressed entirely to issues of the Plaintiffs' lack of confidence and personal distaste and aversion to Steele's management and conduct. The criticism of Steele at this meeting was, in the Court's opinion, aimed towards trying to dispose of Chief Steele, whose appointment many of the members of this group of Plaintiffs opposed in the first place, rather than attempting to confer a benefit on the citizens of Clute by raising issues of public concern. In other words, this meeting was, first and foremost, designed to impugn the competency of Chief Steele on a personal level. The list detailing the grievances of the officers that was presented along with the letter at the Council meeting is very revealing in that it shows the true concerns of the Plaintiffs at this meeting. In particular, the accompanying list detailing the complaints against Chief Steele makes clear that Plaintiffs went to the Council meeting to air complaints of a personal nature against Steele. This list registers complaints against Steele such as: "Jones was not disciplined when he leaked out information," "Only real Police Chief Clute ever had," "Speaks poorly of other city officials," "Continous [sic] put down of Blankenship," "Fletcher had to clean out ashtray," "Nit-pick about being on time for briefing," "Told Simon to get his hands out his pocket at the prison farm with other [sic] present."

The language and tone of the letter of no confidence and accompanying list shows that these Plaintiffs were motivated by personal dislike of Steele. The fact that a presentation was made to City Council does not automatically allow the Court to presume that the matters presented were primarily matters of public concern. To the contrary, it is clear that the matters presented were principally private grievances.

Following the City Council meeting with the complaining police officers in the early morning hours of July 29, 1983, Chief Steele found out about the petitioners' meeting with the City Council members and he requested a meeting with them that evening. At that meeting, Steele indicated to the Council members that he would cause an internal affairs investigation to commence of the signers of the letter of no confidence against him and that he would take disciplinary action if he felt it was warranted. (Deposition of Jerry Adkins, Pg. 29).

Following this meeting between City Council members and Chief Steele, a series of disciplinary measures was taken against those who signed the petition. Plaintiff Simon, a Patrol Sergeant in the Clute Police Department, was terminated on August 11, 1983. Plaintiff Kirk, Head of the Identification Division in the Clute Police Department, was terminated on August 8, 1983. Plaintiff Daniel, a Patrol Lieutenant in the Clute Police Department, was terminated on August 5, 1983. Plaintiff Luxton, a Patrolwoman in the Clute Police Department, was terminated on August 11, 1983. Plaintiff Solomon, a Patrol Sergeant in the Clute Police Department, was terminated on August 10, 1983. Plaintiff McNeil, a Dispatcher in the Clute Police Department, was terminated on August 10, 1983.

Plaintiffs Simon, Daniel, Kirk and Luxton appealed their terminations to the City on August 11, 1983. At this meeting, a motion was made by one of the Defendant councilmen to reinstate the dismissed officers and instruct Chief Steele to consider other disciplinary action against them. This motion was adopted and afterwards, Steele and members of the City Council met and Steele expressed his intention to impose suspensions upon some of those who had signed the letter of no confidence against him. Plaintiffs, upon their return to work on August 12, 1983, were informed that Simon, Kirk, and Luxton were to be suspended without pay for twenty working days and that Plaintiff Daniel would be suspended without pay for thirty days.

Also, these Plaintiffs were placed on six months probation.

Further disciplinary action was taken against Plaintiff Freudensprung, Communications Sergeant, who was suspended on August 23, 1983, and against Plaintiff Fletcher, a Warrant Officer in the Clute Police Department who was suspended on August 17, 1983. These two Plaintiffs, together with Simon, Daniel, Kirk and Luxton, appealed their suspensions to the City Council on August 25, 1983. The City upheld each of the suspensions with the exception of Freudensprung, whose suspension was lifted. Plaintiff Fletcher's disciplinary suspension was reduced to ten days.

In spite of the reinstatements, Plaintiffs continued to complain that some of the members of this group of Plaintiffs were either demoted or not fully restored to their previous duties or back pay. They further claim that Plaintiff Solomon, McNeil and Duffy were constructively discharged. On September 16, 1983, this Court ordered the parties to return to status quo. The Court finds that Defendants have substantially complied with that order.

 The gravamen of Plaintiffs' complaint is that, because of the raising of these alleged issues of public concern, Plaintiffs were terminated or otherwise disciplined by their employer, Steele and the City of Clute. This theory fails because it discounts the very crux of what prompted Steele to conclude that some discipline had to be meted out. Because of the fact that certain officers in the Clute Police Department held feelings of contempt towards Steele, they hoped to find a way to replace him. It is clear from the record that there were efforts to encourage actively and enlist other officers to sign the letter of no confidence against Steele. This contributed to a split in the Clute Police Department, which resulted in poor relations and a hostile work environment. This disruptive behavior, Defendants felt, compromised the ability of the Clute Police Department to function effectively and undermined the authority of Steele to carry out his duties as Chief of Police of the Clute Police Department. In arguing that dismissal was improper in a case like this, an employee has the burden of showing that his conduct was constitutionally protected, and that this conduct was a substantial factor or, to put it in other words, that it was a motivating factor in the employer's decision to discipline him. Upon such a showing, the employer is entitled to show that it would have reached the same decision as to the Plaintiff's employment even in the absence of the protected conduct. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, n. 21, 97 S.Ct. 555, 566, n. 21, 50 L.Ed.2d 450 (1977); *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The Court believes there is little doubt that the conduct here in question, the signing and presenting of the letter of no confidence and accompanying detailed list was a substantial or motivating factor in Steele's decision to discipline the officers. The fact that each of the officers disciplined were signers of the letter of no confidence shows that the signing of the letter of no confidence was a substantial or motivating factor in the decision to impose discipline. The next inquiry, and in the Court's opinion, the determinative inquiry, is whether this conduct should be afforded constitutional protection. The first amendment protects the speech of government employees when that speech addresses a matter of public concern. Regarding the protection to be afforded to matters of public concern raised by government employees, the Supreme Court in *Connick* noted that when the employee speaks as a citizen upon such matters, the First Amendment has long been interpreted to protect that speech from being "chilled" by the fear of discharge. *Davis v. West Community Hosp.*, 755 F.2d 455 (5th Cir.1985) *quoting Connick, supra* at 461 U.S. 145, 103 S.Ct. at 1687, 1688, 75 L.Ed.2d at 717, 718. Such protected speech is contrasted with that of a government employee speaking "as an employee upon matters only of

personal interest." *Id.*, 461 U.S. at 149, 103 S.Ct. at 1690, 75 L.Ed. at 720.

 It is clear that it is not this Court's province to grant relief to Plaintiffs who suffered demotions or suspensions or some other disciplinary measure as a result of speech that cannot be characterized as constituting speech on a matter of public concern: "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick, supra* at 146, 103 S.Ct. at 1689.

On the other hand, in an instance where the expression by an employee regards issues of public concern, the speech may be protected, but the Court does not afford protection automatically just because they are issues of public concern: "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering, supra* at 391 U.S. 568, 88 S.Ct. at 1734–35, 20 L.Ed.2d at 817. At the outset, the Court notes that the inquiry into the protected status of speech is one of law, not fact. *Connick, supra* at 461 U.S. 148, n. 7, 103 S.Ct. at 1690. In the Court's mind, there is no question that the letter of no confidence and the accompanying list of accusations against Chief Steele are not entitled to First Amendment protection. As discussed above, these are nothing but private grievances and they demonstrate on their face that they are not expressions that fall within the parameters of constitutional protection.

As to the statements made at the City Council meeting of July 29, 1983, between the police officers and the City Council members about such things as the budget, funds for training, cages in the patrol cars and other issues of alleged public concern,

the Court is required to employ the balancing test prescribed in *Pickering.* Application of the *Pickering* balancing test is also a question of law. *Schneider v. City of Atlanta,* 628 F.2d 915, 918–919 (5th Cir. 1980).

In striking the balance in the present case, the Court finds that the expression of the Plaintiffs, which in a very limited sense refers to matters of public concern, was outweighed by the interest of the Clute Police Department, which experienced a severe undermining of the efficient operation of its department because of the disruptive consequences that flowed from these expressions.

In *Pickering,* the Supreme Court afforded First Amendment protection to a letter written by a teacher criticizing a school board's allocation of school funds between educational and athletic programs and the Board's and superintendent's methods of informing the school district's taxpayers of the real reasons why additional tax revenues were being sought for the schools. In striking the balance for *Pickering,* the Supreme Court stated: "The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus, no question of maintaining either discipline by immediate superiors or harmony among co-workers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Pickering, supra* at 391 U.S. 569–70, 88 S.Ct. at 1735; see also, *Bickel v. Burkhart,* 632 F.2d 1251 (5th Cir.1980).

Using these guidelines in striking its balance, the Court finds that the City has a greater interest in promoting the efficient functioning of its police department. It cannot be seriously disputed that close working relationships and loyalty within a police department are vital in maintaining its efficient operation. The expression of

the Plaintiffs in this instance, was threatening to dilute the cohesiveness of the department. The fact that the statements at this Council meeting were aimed at a particular person is also an important consideration. The expressions in *Pickering* and *Bickel* which were afforded protection were not aimed at a particular individual; the statements in the present case were. This is evidence of the disruptive nature of this expression and convincingly shows this Court that, even though issues of public concern may have been remotely referred to at the City Council meeting in question, these expressions are not entitled to constitutional protection. For the hereinabove stated reasons, the Plaintiffs' cause is DISMISSED whether such motion is considered as one under Rule 12 or 56, F.R. Civ.P.

It is, therefore, ORDERED, ADJUDGED and DECREED that Plaintiffs' motion for entry of order of dismissal is GRANTED. Plaintiffs' cause of action is DISMISSED.

## APPENDIX 1

TO THE HONORABLE MAYOR AND CITY COUNCILMEN
CITY OF CLUTE, TEXAS

We the undersigned members of the Clute Police Department wish to express our lack of confidence in Rick Steele as our Police Chief. We feel that during his tenure as Chief of Police, the Clute Police Department has suffered greatly due to his lack of administrative and leadership abilities. We do not want this letter to be construed in any way as an ultimatum or threat, but we feel it is our obligation to let you, the City Council, know of the situation that now exists in the Clute Police Department.

Our reasons for our lack of confidence in Rick Steele are as follows:

1) Neglect of his duties as Chief of Police — *not specific*
2) His favortism towards certain members of the Police Dept.- ?
3) His untruthfulness to his employees - *Concern*
4) His arrogant attitude towards employees and citizens — *Other city emplys*
5) His lack of uniformity in discipline - *not specific*
6) His total lack of concern for his employees
7) His continuos degrading of employees both in and out of their presence

*(signatures)*

B. Ramos

5 additional — jobs? (uncertainly) 1 out-of-town

1) Talk with Chief Steele
2) Repercussions concerning jobs

Discipline is not there —
Embarass officers in front —
Shifts were changed
Donut did Budget —
½ meals - rest —
Not following chain of command —
Chief not at Cdls
Training / tapes ...
 mileage & cages did full
 soil / new yard / held out to clowns -

- Wicker
- Markwardt
- Torres
- Jones
- Mackay
- Cortez
- Cassettee
- T. Baur
- M. Bewley
- Buc II
- Steele
- Woودbeck
- Wimberly

# APPENDIX 2

FAVORTISM:
JONES WAS NOT DISCIPLINED WHEN HE LEAKED OUT INFORMATION
INCIDENT WITH JOHN WIEDENBACH
INCIDENT WITH COSSETTE THROWING THE CLIPBOARD AT CAR
ALLOWING TORREZ AND MACKEY TO LIVE TOGETHER.

ARROGANCE:
ONLY REAL POLICE CHIEF CLUTE EVER HAD
SAID HE COULD SPEAK ON ANY SUBJECT
SAID HE IS NOW WHERE HE OUGHT TO BE
SPEAKS POORLY OF OTHER CITY OFFICIALS
CONTINOUS PUT DOWN OF BLANKENSHIP
CONFRONTATION WITH FIRE DEPT., AND THE NEWSPAPER
TALK FROM NUMEROUS CITIZENS AND BUSINEESMEN
SAID PAUL TABOR WAS A FAT LITTLE FART AND DIDN'T DATE WOMEN
SENT OFF TO BE PUT IN WHO'S WHO IN AMERICAN LAW ENFORCEMENT
COMPARES HIMSELF WITH JESUS CHRIST
FLETCHER HAD TO CLEAN OUT ASHTRAY
CONTINOUS EMBARASSMENT-WICKER IN AUSTIN
~~USED TO GO TO F.B.I. ACADEMY~~

*[margin handwritten notes: NOT SHAKING HANDS with other players. upset on Business Card for not having name]*

*[margin handwritten notes: Have Duffey Call Pizza Inn for Half-Price. House GUARD Lunches]*

DISCIPLINE
~~COSSETTE~~ LETTERIN FILE ONLY THIRTY DAYS
~~CORTEZ~~ LETTERIN FILE ONLY NINETY DAYS, JOHN GOT FIVE DAYS
NO CHAIN OF COMMAND
REMANDS SUPERVISORS ORDERS
NIT-PICK ABOUT BEING ON TIME FOR BRIEFING

CONCERN:
LUXTON IN HOSPITAL
WIEDENBACH IN HOSPITAL
DEAL WITH JAINE VS. CAR
DEAL WITH FLETCHER AND THE FLASHLIGHT
SPENDING OF TRAINING MONEY ON HIMSELF, CAUSING OFFICERS TO PAY FOR THIER
OWN SCHOOLS

DEGRADING:
DANIEL LEAVING- KEEPS BAD MOUTHING HIM
EMPLOYEE THEFT-BAD MOUTHED DANIEL
LOSING OFFICER, BLAMED ON DANIEL
SOLOMON AND SIMON NOT OLD ENOUGH TO WIPE ASS
T SHIRTS FOR FESTIVAL, EXCEPT FOR THE BABIES WHO HAD TO WEAR A VEST
CUT DOWN DUFFEY ON THE RADIO FOR NOT BEING AT THE P.D. MORE
JUMPED ON WICKER, WIESE, AND DUFFEY FOR THE RUMOR THAT THE GUN RANGE
WAS CHANGED BECAUSE STEELE DIDNT QUALIFY
HOLLORED AT THE HONOR GUARD OVER IN LAKE JACKSON
TOLD SIMON TO GET HIS HANDS OUT HIS POCKE T AT THE PRISON FARM WITH
OTHER PRESENT
HOLLORED AT SIMON IN PARADE .C. TO STAY IN STEP, SEVERAL CITIZENS PRESENT
WANTS TO HAVE FLETCHER BRU OUT OF THE PICTURE AT A COST OF $35-50

DUTIES:
DID NOT EVEN HELP WITH THE BUDGET
WORKS ON COLLEGE TESTS ON CITY TIME
SITS IN HIS OFFICE AND CUTS OUT NEWS CLIPPINGS OF HIMSELF
NEVER AROUND, ALWAYS TAKING TRIPS
TAKING VACATION (4) DAYS AFTER BEING HERE ONLY 6 MONTHS
TOLD MIKE TO GO TO THE BEACH ANYTIME HE FELT BAD(CITY TIME AND CAR)
KEEPS HIS DOG (CHIEF BRUTUS OF CLUTE) AT THE POLICE DEPT.
SENT OFF TO GO TO THE FBI ACADEMY AFTER BEING HERE ONLY ONE MONTH
HAD WIMBERLY GO OVER TO PALMERS AND PAY OFF HIS SONS BAD CHECK, AFTER
IT HAD BEEN FILED IN CITY COURT
TEACHES COLLEGE CLASSES AT COLLEGE WHEN THEY COULD BE TAUGHT HERE AT NO
EXPENSE - *Drives Cez to Alvin to Teach*
DISCUSSED SIMONS LAWSUIT AT CIVIL LIABILITY CLASS
CUSSED REPEATEDLY AT "HIS LOVE" WHILE GIVING A TALK
CHEWED OUT TABOR IN CITY HALL IN FRONT OF SEVERAL POEPLE

UNTRUTHFULNESS:
TELLS CITY MANGER THAT PLYMOUTHS ARE GETTING POOR GAS MILEAGE AND THAT
THE CAGES DONT FIT SO HE CAN ORDER BUICKS OR FORDS--BOTH PLACES HE
GOT BIDS FOR, HIS WIFE WORKED FOR OR NOW DOES.

1) *Brown.. Dry Cace Cewel - Tow lymenate Sne Dion - Have to Reser Child. Abuse, if sne Don - want to.*

1) *Gauge was Stupid, & Court Clerks Dion't Know what they were Doing.*

*Everyone who Applied for Chief of Police were Stupid*
" *Laughed @ woman Trying to make a Case for Trying to Clean 9 asked for Transportation.*

*This is He wants those to give switch on How to make Drunk Leave Intoxilizer Test.*

*Honor Guard - All overtime cost to City.*

TOLD DISPATCHER SHE WOULD NEVER BE MORE
THAN A DISPATCHER OR CLERK NO MATTER
WHAT SCHOOL OR TRAINING - OR TIME OCCURED
BECAUSE SHE WAS HIRED IN Communications.
APPLICATION would BE DENIED EVEN IF
OTHER APPLICANT WASN'T AS QUALIFIED.
STATED WE ALREADY HAD TOO MANY WOME
STATED TO 2 different FEMALES